## Greater Pittsburg Real Estate Company *v.* Riley, Appellant.

*Corporations—Stock subscription—Certificate for charter—Estoppel.*

Where an incorporator of a corporation of the second class under the Act of April 29, 1874, P. L. 73, has signed and sworn to a certificate for charter in which he states that he has subscribed for a certain number of shares at a par value of an amount stated, he will not be permitted subsequently, in an action by the corporation itself against him to recover the amount of his stock subscription, to say that there was a secret understanding at the time, that his subscription was for a much smaller number of shares, and that the remainder above the number alleged were to be treated as treasury stock; and this is the case although the suit was not instituted at the instigation of creditors, and there is no allegation of a deficiency of assets.

The requirements of the corporation statute are independent of the equities, and mandatory in themselves. They are the conditions precedent on which the governor, in behalf of the commonwealth, confers the franchises applied for, and having been presented and acted upon as truly performed, public policy and good faith to the commonwealth, demand that they shall not be open to denial by the parties.

Argued Oct. 26, 1904. Appeal, No. 97, Oct. T., 1904, by defendant, from order of C. P. No. 3, Allegheny Co., Feb. T., 1904, No. 257, making absolute rule for judgment, for want of a sufficient affidavit of defense in case of Greater Pittsburg Real Estate Company v. John D. Riley. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit on a stock subscription.

Rule for judgment for want of a sufficient affidavit of defense.

The material portion of the affidavit of defense was as follows:

This defendant was one of a number of men, among whom were William D. Beatty, now president of the plaintiff company, who entered into a verbal agreement, each with the other, to organize a real estate company, and their agreement was that each should invest $250 in the capital stock of the said company.

At the time of the organization of said company, when the parties met in the office of their counsel, Stone & Stone, it was mutually agreed that the nominal capital stock of the company should be $25,000, but the understanding and agreement as to the amount of capital stock to be taken by each of the members of the corporation, among whom was this defendant, remained unchanged.

It is true that upon the face of the application for letters patent, this defendant appears to be a subscriber for 100 shares of the capital stock of the Greater Pittsburg Real Estate Company, but avers that the amount set opposite his name was done arbitrarily by the counsel for the plaintiff company, and in the placing of said stock he acted as a trustee for the Greater Pittsburg Real Estate Company, and that after the issuance of said charter, the entire number of shares, except the five shares which this defendant did agree to take and did take and pay for, was left in the treasury of the Greater Pittsburg Real Estate Company where it belonged, according to the understanding and agreement of all parties.

This deponent further avers that the understanding had between the stockholders was confirmed at a meeting held subsequent to the organization and incorporation of the Greater Pittsburg Real Estate Company, when a resolution was passed, as shown by the minutes of said company, authorizing W. J. Stewart to make sale of the treasury stock, being all the stock, except the thirty shares taken by all of the six original incorporators, of whom this defendant was one, and fifteen shares already sold to Bealor, Peppel and Bailey, and treating all of the balance of said stock as treasury stock. This resolution

was passed by the consent and sanction of the stockholders of the plaintiff company.

This deponent further avers that on or about July 15, 1903, this defendant sold and transferred to W. J. Sloan his five shares of stock, receiving therefor the sum of $100 and that from that date until this, this defendant has no knowledge whatever of the affairs of the Greater Pittsburg Real Estate Company, was not a member of its board, had nothing whatever to do with the transaction of its business and was not in any way recognized as connected either as stockholder or officer or debtor to said Greater Pittsburg Real Estate Company.

*Error assigned* was the order of the court.

*H. L. Castle*, of *Stone & Stone*, for appellant, cited : McCarty v. Selinsgrove, etc., R. R. Co., 87 Pa. 332 ; Smith v. Bell, 107 Pa. 352 ; Sinkler v. Turnpike Co., 3 P. & W. 149.

*Lee C. Beatty*, for appellee, cited : Auburn Bolt, etc., Works v. Shultz, 143 Pa. 256 ; Muncy Traction Engine Co. v. Green, 143 Pa. 269 ; Tillyer v. Hero Jar Co., 17 Phila. 153 ; Graff v. Pittsburg, etc., R. R. Co., 31 Pa. 489 ; Robinson v. R. R. Co., 32 Pa. 334 ; Custar v. Titusville Gas & Water Co., 63 Pa. 381 ; Bell's App., 115 Pa. 88 ; Bristol Iron & Steel Co. v. Selliez, 175 Pa. 18 ; Strasburg R. R. Co. v. Echternacht, 21 Pa. 220.

OPINION BY MR. CHIEF JUSTICE MITCHELL, December 31, 1904 :

Plaintiff, a corporation of the second class under the Act of April 29, 1874, P. L. 73, brought this action against defendant to recover the unpaid portion of his subscription to 100 shares of its capital stock. The defense set up in the affidavit was that the corporation was formed under a verbal agreement of the corporators that each should invest $250 in the stock ; that although the capital was nominally placed at $25,000 and defendant was recorded as having subscribed for 100 shares yet the real agreement was that he was only to take five shares and all the rest were to be treated as " treasury stock " of the company

itself ; that the understanding was ratified at a meeting of the stockholders held subsequent to the incorporation of the company and that defendant had paid the amount for which he really subscribed, had sold his shares to one S and was not in any way connected or chargeable as a stockholder, etc.    The court below held the affidavit insufficient and gave judgment.    We thus have the question squarely presented whether under the circumstances a subscriber can escape from his apparent obligations in regard to the corporation.

The statute requires that to procure the incorporation the charter " must be subscribed by five or more persons, three of whom at least must be citizens," and must set forth, inter alia, " the names and residences of the subscribers and the number of shares subscribed by each."    A certificate for a corporation of the second class must further state that " ten per centum of the capital stock thereof has been paid in cash to the treasurer of the intended corporation, and the name and residence of such treasurer shall be therein given.    The same shall be acknowledged by at least three of the subscribers thereto, . . . . and they shall also make and subscribe an oath or affirmation to be endorsed on the said certificate that the statements contained therein are true."    This certificate is produced to the governor who after examination approves and directs letter patent of incorporation to be issued.    These latter requirements only apply to corporations of the second class namely those for profit, and are based on considerations of public policy and the protection of parties dealing with the corporation.    They are not merely formal, therefore, but substantial and mandatory.

In the present case all these provisions of the statute were complied with by the defendant himself among others.    He signed the certificate as a subscriber for 100 shares, was named in it as the treasurer of the company, and was one of the three subscribers who made the necessary affidavit that the facts set forth were true including the amount of the capital stock at $25,000, and the payment in cash to the treasurer of ten per cent, $2,500.    A clearer case for estoppel would be hard to imagine.

As against creditors, or any having proper claims on the assets of the corporation, a stockholder or subscriber is not permitted in equity to set up that his subscription was only nom-

inal or that he was not to pay for it: Graff v. Pittsburg, etc., R. R. Co., 31 Pa. 489 ; Robinson v. Pittsburg, etc., R. R. Co., 32 Pa. 334; and it is argued here that the suit is not by creditors, nor is there any allegation of a deficiency of assets.

But the requirements of the statute are independent of the equities, and mandatory in themselves. They are the conditions precedent on which the governor, in behalf of the commonwealth, confers the franchises applied for, and having been presented and acted upon as truly performed, public policy and good faith to the commonwealth demand that they shall not be open to denial by the parties.

In Rowley's Appeal, 115 Pa. 150, it was held in the court below that a subscriber to the charter, certified as such to the governor, could not be shown by other subscribers to have had no interest in the stock and merely to have allowed the use of his name to make an apparent compliance with the statute. " This defense if true was a plain fraud on the law. If the facts now alleged by the respondent had been truly set forth in their application the governor would not have granted them a charter. By joining in the application which set forth the complainant and others as corporators according to law, the respondents estopped themselves from contesting the truth of that fact." The decision was affirmed by this court, though no opinion was formally expressed on the particular point here involved. But in Sturgeon v. Apollo Oil & Gas Co., 203 Pa. 369, the same principle was applied to the declaration of parties under the statutes regulating limited partnerships, the court saying the fact that in Rowley's Appeal it was stockholders in a corporation who sought for their own advantage to allege a violation of law made no difference in principle. " Both stockholders in corporations and shareholders in limited partnerships organize or associate under the law because of the special privileges such organizations give them and the special immunity from unlimited liability. Their organizations must, therefore, be made in good faith in obedience to the law," citing the passage quoted supra from Rowley's Appeal.

Judgment affirmed.